J-A10022-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| WILLIAMS FIELD SERVICES COMPANY, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CLEO R. TEEL AND GLORIA D. TEEL, HUSBAND AND WIFE, | |
| Appellees | No. 1475 MDA 2013 |

Appeal from the Judgment entered August 8, 2013,
in the Court of Common Pleas of Susquehanna County,
Civil Division, at No(s): 2012-1959-CP

BEFORE:  DONOHUE, ALLEN, and STABILE, JJ.

DISSENTING MEMORANDUM BY ALLEN, J.:          **FILED AUGUST 25, 2014**

I respectfully dissent from the Majority's disposition vacating the trial court's judgment entered in favor of Cleo R. and Gloria D. Teel, husband and wife, (collectively "the Teels"), following the trial court's entry of nonsuit in favor of the Teels.

Instantly, the entry of the nonsuit against Appellant effectively denied the equitable remedy Appellant sought, i.e., a permanent injunction against the Teels.  Therefore, in reviewing the trial court's denial of injunctive relief, an abuse of discretion standard applies, which precludes an "inquir[y] into the merits of the controversy," and only allows an examination of the record "to determine if there were any apparently reasonable grounds for the

actions of the court below." ***Erickman v. Erie Insurance Exchange,*** 21 A.3d 1203, 1206-1207 (Pa. Super. 2011). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." ***Id.*** My review of the record indicates that the trial court had "reasonable grounds" for entering the nonsuit, and therefore I would affirm.[1]

In granting the nonsuit in favor of the Teels, the trial court determined:

> The crux of [Appellant's] argument as it pertains to this particular issue is that the Pipeline Right-of-Way and Compressor Site Grant executed on October 6, 2007 (hereinafter "Right-of-Way Agreement") and the Compressor Station Agreement executed on June 19, 2008 (hereinafter "Compressor Agreement") are controlling and merely require mutual consent that "shall not be unreasonably withheld." Complaint, ¶29; see also Right-of-Way Agreement. It is [Appellant's] contention that consent was, in fact, obtained from [the Teels].
>
> [The Teels'] contention is simply that they never consented to construction of the discharge pipeline at issue in the instant matter. Answer and New Matter, ¶12. [The Teels] assert that they were "unilaterally sent a check for payment of the easement rights requested by [Appellant] but refused to accept the check and tried to return it."

_____

[1] Contrary to the Majority's assertion, a careful reading of this dissenting memorandum reflects the recognition that a trial court's actions vis á vis injunctions and nonsuits are to be reviewed by our Court under an abuse of discretion standard. This dissenting memorandum has neither ignored nor conflated this standard of review. Any assertions to the contrary are inaccurate. After a careful scrutiny of the record, I respectfully disagree with the Majority's disposition in this matter.

Based on the testimony provided at trial, we are of the opinion that [the Teels'] consent, as required by the Right-of-Way Agreement, was never obtained by [Appellant]. At no point did [Appellant] or its witnesses provide this Court with proof that consent was obtained.

Preliminarily, [Appellant] admitted that mutual consent was required in order to move forward with the discharge pipeline. N.T., 07/10/13, p. 24, ¶9-24; p. 97, ¶7-24. However, during the negotiations between the parties, [the Teels] were consistent in their refusal to allow construction of the discharge pipeline absent agreement on certain provisions, as evidenced by the following testimony provided by Ms. Cremer:

Q: Did you have any knowledge whether the Teels wanted this pipeline to be built at all on their property?

A: I believe they did say that they would prefer not to have any more pipelines on their property.

Id., at p. 50, ¶12-16.

Q: Okay. How did that meeting end? What was the result of that meeting?

A: Pretty much we were in agreement on the route, that was not an issue. I said that we would go back and take a look at the provisions and figure out what we could do or not do and I told them that - - there was no way that we would be able to budge on the money and I asked them to seriously consider that during that period of time and - that was it.

Id., at p. 61, ¶1-9.

Q: I'm going to show you, Ms. Cremer, what we've marked as [Appellant's] Exhibit Number 7. Do you recognize that document?

A: Yes.

Q: Okay. And what is that document?

A: This is a - - letter from Mr. and Mrs. Teel sent to [Appellant] to the person who actually issued the check stating that they will not accept payment for the pipeline right-of-way, and that contrary to what we have said or

> what you had said, that they have not consented to the location of the proposed pipeline, however, they still do remain interested in discussing [Appellant's] desire to install an additional pipeline.
>
> Id., at p. 63, ¶11-24.
>
> Q: So there was no final agreement reached at the meeting on April 4th.
>
> A: No.
>
> Id. at p. 78, ¶ 19-11.
>
> It is clear from the aforementioned testimony, along with other testimony provided at various stages of trial, that consent was never fully obtained. [Appellant] may argue that consent to location was obtained, but that hardly satisfies the consent requirement, considering the fact that [the Teels] had issue with monetary compensation, among other provisions. Each of [Appellant's] witnesses stated that an agreement as to location was obtained. However, each witness also stated that there were outstanding provisions presented by [the Teels] that had yet to be finalized. Assuming for a moment that an agreement as to location was, in fact, obtained, we fail to see how agreeing on one (1) or a few issues, but failing to agree on the rest, constitutes consent as to the whole.
>
> Based on the foregoing, it is clear that [Appellant] failed to meet its burden of proof regarding mutual consent. Because no agreement was present between the parties, [Appellant] was not entitled to permanent injunction, rendering a nonsuit in favor of [the Teels] appropriate.

Trial Court Opinion, 10/1/13, at 3-5. My examination of the record comports with the trial court's conclusion that Appellant did not meet its burden of showing it was entitled to a permanent injunction against the Teels, such that a nonsuit was appropriate.

An injunction is a court order that prohibits or commands virtually any type of action. It is an extraordinary remedy that should be issued with

caution and "only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable." ***Big Bass Lake Community Association v. Warren,*** 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008) (*quoting* 15 Standard Pennsylvania Practice 2d, § 83:2 (2005)). The requirements for permanent injunctive relief are well settled: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested. ***Id****.* Even where the essential prerequisites of an injunction are satisfied, the court must narrowly tailor its remedy to abate the injury. ***Id.*** at 1144–1145 (*citing **John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.,*** 471 Pa. 1, 7, 369 A.2d 1164, 1167 (1977)).

> The power to grant or refuse injunctive relief "rests in the sound discretion of the court under the circumstances and the facts of the particular case." *Rick v. Cramp,* 357 Pa. 83, 91, 53 A.2d 84, 88 (1947). "The court which is to exercise the discretion is the trial court and not the appellate court. The action of the court may be reviewed on appeal for error in case of a clear abuse of discretion, but not otherwise." *Id.* at 91, 53 A.2d at 89.

***Woodward Township v. Zerbe***, 6 A.3d 651, 658 (Pa. Commwlth. 2010).

The testimony adduced at trial did not establish that Appellant's right to build a new discharge pipeline on the Teels' property was "clear" and "free from doubt." *See* Trial Court Opinion, 10/1/13, At 3-5. Significantly, Appellant's brief concedes that the Teels did not consent to the new pipeline. Specifically, while Appellant argues that the Teels' consent was unnecessary,

Appellant's brief states that "[u]pon approaching the Teels regarding the placement of the discharge line on their property under the existing agreements that [Appellant] acquired from Cabot, the Teels told [Appellant] that they did not want any additional pipelines on their land…" Appellant's Brief at 7. Appellant further acknowledged, "after several months of meetings, telephone calls, and correspondence between the Teels and representatives of [Appellant], a new agreement regarding compensation and other terms for a pipeline agreement could not be reached among the parties." *Id.* at 8.

Furthermore, the record reviewed *in toto* does not evince "an urgent necessity to avoid an injury that cannot be compensated in damages." **Big Bass Lake,** 950 A.2d at 1144 (internal citation omitted). Appellant is not without recourse at law. Appellant can initiate a civil action for damages against the Teels for a breach of contract alleging that the Teels unreasonably withheld their consent to the construction of the new pipeline.

Finally, I am not persuaded by my review of the record that Appellant has demonstrated how a "greater injury will result from refusing, rather than granting, the relief requested." **See Big Bass Lake, supra**. Therefore, I would affirm the trial court's grant of nonsuit. **Wyland v. West Shore School District,** 52 A.3d 572, 582-583 (Pa. Commwlth. 2012) **citing Cnty. of Allegheny v. Commonwealth,** 544 A.2d 1305, 1307 (Pa. 1988) (emphasis in original) ("[Our] Supreme Court consistently holds that 'for a preliminary injunction to issue, *every one* of [the] prerequisites [to the

- 6 -

granting of an injunction] must be established; if the petitioner fails to establish any one of them, there is no need to address the others.'").